UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**CASE NO.: 00-6295-CR-DIMITROULEAS**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**IVORY KNIGHTS**,

    Defendant.

_____/

**DEFENDANT'S MOTION TO SUPPRESS SEARCH WARRANT AND AFFIDAVIT; DRUGS; ANY AND ALL EVIDENCE SEIZED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE; AND REQUEST FOR A HEARING**

The defendant, Ivory Knights, through counsel, respectfully moves this Honorable Court, pursuant to Rules 4(a), and 12, Federal Rules of Criminal Procedure, the Fourth, and Fourteenth Amendments to the United States Constitution, to suppress in this case, the search warrant and affidavit, any and all drug paraphernalia and drugs, including cocaine, papers, and documents, etc.. As grounds for this motion, the defendant would allege that the above-mentioned evidence was obtained by the police as a result of an unlawful seizure, and search of the residence where the defendant was at the time, with an illegal search warrant, without the defendant's consent, and without any probable cause. Defendant would further allege that the issuance of the search warrant, and seizure of the above-named evidence were in violation of the laws stated above.



### THE CHARGE

The defendant is charged in this case, by indictment, with a lone count of Possession of Crack Cocaine, that allegedly occurred on July 28, 2000.

### FACTUAL BACKGROUND OF THE ISSUANCE OF THE SEARCH WARRANT

1. **According to the police reports, and the Affidavit for the search warrant** prepared by, and sworn to, by Detective Rohloff of the Fort Lauderdale Police Department, Detective Rohloff allegedly received information **(at an unknown date)** from **(an unknown and unidentified)** "concerned citizen", that occupants inside the apartment located at 2901 NW 18th Street, #18, in Fort Lauderdale, Florida, were selling **cannabis**.

2. Detective Rohloff then contacted a confidential informant (hereinafter called the CI), to make a controlled buy from the residence "between the dates of July 19, and July 26", 2000. **(The date that the actual controlled buy was made by the CI was neither stated nor specified in the police report.)**

3. The detective had allegedly used the CI in the past, and he believed the informant to be reliable.

4. On the day of the alleged controlled buy **(which remains unknown)**, the CI was wired with a Unitel listening device, which Detective Rohloff was listening in on.

5. Once at the apartment, the CI knocked at the front door, and an unknown black male, approximately 28-30 years-old; 6'1; and 190 lbs, answered the door.

6. Detective Rohloff then heard the CI being told to come into the apartment. The CI entered, and said to the person that asked him in, "I need four sacks". The black male

then walked into the rear bedroom, and returned with five baggies of cannabis, which he gave to the CI in exchange for a twenty-dollar bill, investigative marked currency.

7. The CI then allegedly asked the black male when he could come back, and the black male allegedly stated: "we're open all the time".

8. The CI then left the apartment, and handed the cannabis to Detective Rohloff, who then valtoxed it, and it tested positive for the presence of cannabis.

9. On July 27, 2000, the Honorable Judge Schapiro signed the search warrant for the apartment.

### EXECUTION OF THE SEARCH WARRANT

1. On July 28, 2000, the search warrant was executed at the apartment, by Detective Rohloff, and other members of the Fort Lauderdale Police Department.

2. During the time immediately preceding the execution of the search warrant on July 28, 2000, Detective Gillis, also of the fort Lauderdale Police Department, walked to the said apartment, where he allegedly observed the defendant, Ivory Knights, standing outside the apartment, on the sidewalk, just south of the apartment.

3. At this time, Detective Gillis allegedly approached the defendant, and asked him if he knew where he (Detective Gillis) could get some weed. The defendant then asked him what he needed, and Detective Gillis replied that he needed "four". Knights then told Gillis to follow him inside, whereupon the defendant allegedly sold Gillis four baggies of cannabis which Gillis believed the defendant retrieved from the bedroom of the apartment.

4. The detective and other police officers then moved in to execute the search warrant at the apartment, and when they arrived at the apartment, they saw the defendant standing

outside of the apartment, with another black male, Keith Jackson, and both the defendant and Keith Jackson were detained outside of the apartment, while the police went into the apartment.

5. Before the police went inside the apartment, they allegedly knocked and announced their presence, and waited for a reasonable amount of time, before they went in, on getting no response from inside the apartment.

6. No one was found inside the apartment at the time of the execution of the warrant.

7. Detective Gillis then returned to the scene, and identified the defendant as the person that sold the said cannabis to him.

8. Once inside the apartment, Detective Rohloff recovered an orange-colored "M and M" container on the living room coffee table, and inside it were seven crack cocaine rocks; while Detective Shields recovered from inside the bedroom dresser, two clear sandwich baggies with crack cocaine rocks; and another clear plastic baggie containing about 12 grams of cannabis was recovered on top of the bedroom dresser.

9. Miscellaneous papers that allegedly bear the defendant's name, and several small plastic baggies were also recovered, and the sum of $253 was found in the defendant's pants-pocket.

## ARGUMENT

1.     **THE SEIZURE OF THE CRACK COCAINE WAS OUTSIDE
       THE SCOPE OF THE SEARCH WARRANT**

The seizure of the crack cocaine from the apartment was outside the scope of the search warrant, in that the Detective Rohloff in the search warrant affidavit, specifically stated that property he believed may be found inside the apartment were as follow:

> "cannabis, and any records of the use, storage, and sale
> of cannabis. Any papers tending to show control of the
> premises and/or the cannabis, and any drug related
> paraphernalia. Also, any monies derived from the sale of
> cannabis".

There is no language in the affidavit, or search warrant, (in terms of the property sought in the affidavit to be seized, or authorized in the search warrant to be seized), that permits or authorizes the seizure of cocaine from the defendant or the apartment. The word "cocaine", and mention of all other drugs, except cannabis, are specifically omitted from the affidavit and warrant, as property sought or permitted to be seized from the premises. Given the legal requirement that a search warrant must be specific in terms of property sought to be seized, and in light of the fact that cocaine is specifically excluded in the warrant, the police had no lawful authority to embark on a searching spree for any evidence of crime other than those specific in, and authorized for seizure by the warrant.

Further more, the police at no time, had any probable cause to believe that cocaine would be found in the apartment since the so-called "concerned citizen's complaint" and the "controlled buy" in which the CI was utilized, involved cannabis, exclusively. No one ever saw cocaine or otherwise had any kind of knowledge or reason to believe that cocaine was, or would be found in the apartment, hence the police specifically sought only the seizure of cannabis in the warrant, and no other drugs.

Any suggestion that the clear language of the search warrant which exclusively permitted the seizure of cannabis drug, would serve to render the search warrant unconstitutionally vague, over broad, and general, and thereby mandating that the search warrant at bar

be struck down in its entirety.

2.  **THERE WAS NO PROBABLE CAUSE FOR THE ISSUANCE OF THE SEARCH WARRANT, AND THE OMISSION OF THE DATE OF THE CONTROLLED BUY FROM THE AFFIDAVIT, RENDERED THE SEARCH WARRANT FACIALLY DEFECTIVE, AMBIGUOUS, DECEPTIVE, MISLEADING, AND STALE AT BEST**

The search warrant is defective on its face, and in substance, in that the specific date of the alleged concerned citizen's complaint, or the specific date of the controlled buy that were supposed to form the basis for the magistrate's determination of probable cause and the issuance of the search warrant, occurred at an unknown, unspecified, and indeterminable date, thereby rendering the information about the controlled buy, ambiguous, misleading, deceptive, and stale at best, at the time it was presented to the magistrate by way of affidavit.

In the absence of specificity of the date the controlled buy took place, there was no reasonable or substantial basis for the magistrate to determine whether there was still probable cause at the time the warrant was presented to him, that cannabis or other evidence of crime would still be found at the residence, especially in light of the fact that there was no showing on the face of the affidavit, that the criminal activity of selling drugs was ongoing at the time the warrant was presented to the magistrate.

The affidavit indicated that there was only one buy, controlled (or otherwise), that was made before the warrant was presented to the magistrate, and nothing more. There was no showing in the warrant that the CI saw or had knowledge of the presence of cannabis in the apartment, other than the amount that was sold to him by the "black male" at the time of the controlled buy (whatever that date was). Further more, there was no allegation in

the affidavit that prior to whatever date the cannabis was sold to the CI, that cannabis had previously been sold from the residence, to any other known or identifiable person.

Not only did the said affidavit fail to state the specific date that the controlled buy took place, it also failed to even allege that a controlled buy occurred at the apartment between July 19, and July 26, 2000, or at any other date. The magistrate might have been misled into signing the warrant, under the unreasonable assumption that the said controlled buy might have occurred the day before the warrant was presented. It is not for the Magistrate to guess as to when the controlled buy that gave rise to the probable cause might have occurred. Rather, it is always the duty of law enforcement officers to provide such information in the affidavit, in as clear terms as possible, without any ambiguities or deception.

Even if we assume arguendo, that the said controlled buy could have occurred on July 19, 2001, and given the fact the warrant was presented and signed on July 27, 2000, the time lapse between these two dates would have been 8 days, and in the absence of credible information in the affidavit, regarding continuing cannabis sale at the residence, the said controlled buy would have provided a stale foundation for the magistrate's or law enforcement officers' belief that cannabis would be found in the apartment 9 days after the one and only (controlled) cannabis buy from the apartment.

3.  **THE POLICE FAILED TO READ THE SEARCH WARRANT TO THE DEFENDANT PRIOR TO ITS EXECUTION, AS REQUIRED BY LAW.**

The police report stated that the defendant and Keith Jackson were found outside of the

apartment at the time the police arrived to serve the search warrant on July 28, 2000, and that no one was found inside of the apartment at the time. The police therefore had ample opportunity to read the search warrant to the defendant, with no risk to the officers, or risk of destruction of the evidence, yet they failed to read the warrant to the defendant, until after they had searched and retrieved the drugs and other evidence in question, thereby violating the defendant's due process and Fourth Amendment rights.

Other grounds to be argued **Ore Tenus**

**WHEREFORE**, the defendant Prays this Honorable Court to grant the relief requested herein, and suppress, all the evidence recovered from the apartment, including the cocaine, cannabis, papers, documents, and drug paraphernalia.

### CERTIFICATE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing motion was furnished by hand/U.S Mail/Fax, to Assistant United States Attorney Bruce O. Brown, at the U.S Attorney's Office, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33301, this 3rd day of March, 2001.

Respectfully Submitted,

**LAW OFFICE OF LAURA CHUKWUMA, P.A.**
200 SE 6th Street, Suite 305
Fort Lauderdale, Florida 33301
Tel: (954) 524-1717
Fax: (954) 524-1782

BY:_____

**Laura A. Chukwuma, Esquire**
Attorney for Defendant
Florida Bar No.: 979678